UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| IVAN GOLDSMITH; et al, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES D. SILL, et al., <br><br> Defendants. | 2:12-cv-0490-LDG-CWH |

Plaintiff Ivan Goldsmith is a physician who practices in Nevada.  Goldsmith has been represented by defendants in a class action lawsuit filed in the Central District of California titled Goldsmith v. Allergan, Inc., Case No. 09-cv-7088 ("Allergan action").  Goldsmith instituted the current action in state court generally alleging that defendants abandoned his individual claim in the Allergan action in favor of pursuing a settlement of the class action, in which he is named as class representative.  The state court action was removed to this court, and defendants have filed a motion to dismiss plaintiff's complaint under Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6) (#4, #9, opposition #17, reply #20).  Defendants argue that the court lacks personal jurisdiction over them, that the court lacks subject matter jurisdiction because the case is not ripe for adjudication, and that the complaint fails to state a claim for which relief can be granted.

A.      Personal Jurisdiction

A two-part analysis governs whether a court retains personal jurisdiction over a nonresident defendant.  "First, the exercise of jurisdiction must satisfy the requirements of the

applicable state long-arm statute." Chan v. Sociaety Expeditions, 39 F.3d 1398, 1404 (9th Cir. 1994). This requirement is satisfied since "Nevada's long-arm statute, NRS §14.065, reaches the limits of due process set by the United States Constitution." See Baker v. Eighth Judicial District Court ex rel. County of Clark, 999 P.2d 1020, 1023 (Nev. 2000). "Second, the exercise of jurisdiction must comport with federal due process." Chan, 39 F.3d at 1404-05. "Due process requires that nonresident defendants have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." Id. (citing Int'l Shoe v. Washington, 326 U.S. 310, 316 (1945)). Courts analyze this constitutional question with respect to two forms of jurisdiction: general and specific jurisdiction.

In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010). "That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001) (citations omitted). "Uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." Am. Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996) (citations omitted). However, a court may not assume the truth of allegations in a pleading that are contradicted by affidavit. Data Disc., Inc. v. Systems Tech. Assoc., 557 F.2d 1280, 1284 (9th Cir. 1977). If the plaintiff is able to meet its prima facie burden, the movant can nevertheless continue to challenge personal jurisdiction either at a pretrial evidentiary hearing or at trial itself. Metropolitan Life Ins. Co. v. Neaves, 912 F.2d 1062, 1064 n. 1 (9th Cir. 1990).

General jurisdiction requires that the defendant engage in "continuous and systematic general business contacts" that "approximate physical presence" in the forum state. CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1074 (9th Cir. 2011) (quoting Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984)). "To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, [courts] consider their '[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." CollegeSource, 653 F.3d at 1074 (quoting Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3df 1163, 1172 (9th Cir. 2006)). Here, plaintiff does not appear to assert that the court has general jurisdiction over any defendant.

Specific jurisdiction exists where "[a] non-resident defendant's discrete, isolated contacts with the forum support jurisdiction on a cause of action arising directly out of its forum contacts." CollegeSource, 653 F.3d at 1075. Courts use a three-prong test to determine whether specific jurisdiction exists over a particular cause of action: "(1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws: (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, ie., it must be reasonable." Id. at 1076 (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)). The party asserting jurisdiction bears the burden of satisfying the first two prongs. CollegeSource, 653 F.3d at 1076 (citing Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)). If it does so, the burden shifts to the party challenging jurisdiction to set forth a "compelling case" that the exercise of jurisdiction would be unreasonable. CollegeSource, 653 F.3d at 1076 (quoting Burger King Corp., v. Rudzewica, 471 U.S. 462, 476-78 (1985)).

3

### 1. The Sill defendants

Goldsmith names as defendants the law firm of Sill & Medley, PLLC, (currently named Sill Law Group, PLLC) (the "Sill firm") and partners James D. Sill and Matthew J. Sill (collectively, the "Sill defendants"). Sill is a limited liability professional corporation incorporated in and operating in Oklahoma. No Sill firm attorneys reside, or are licenced to practice law, in Nevada. The Sill firm has had no offices nor paid taxes in Nevada, nor had a telephone listing, bank account, or mailing address in Nevada.

The Sill firm had come to Nevada on previous occasions to meet with Goldsmith as a consultant in medical malpractice and other mass tort litigation. In his affidavit, Goldsmith states that he collaborated with and was paid by the law firm to "sign[] up and work[] up" cases, including Hepatitis C litigation and others. Goldsmith affies that based on this past relationship with the Sill firm and, in particular, defendant James Sill, he contacted the firm with a potential case involving Botox vials containing quantities that were greater than individual doses, and the way the manufacturer, Allergan, had packaged, marketed and distributed the product to Goldsmith and others. According to Goldsmith, members of the Sill firm came to Las Vegas on multiple occasions to obtain information and structure potential litigation. The Sill firm then undertook to represent Goldsmith in an action against Allergan, the manufacturer of Botox, both individually and as the representative in a class action.

The case was filed in California, where Allergan is based. Sill associated with two other firms in the course of prosecuting the Allergan action, Finkelstein Thompson, LLP ("Finkelstein") and Kirtland & Packard, LLP ("K&P"). The Allergan action proceeded to the point of the parties reaching a settlement term sheet regarding the class settlement. Goldsmith contends in his complaint that the Sill firm, Finkelstein and K&P settled his claim as class representative while abandoning his individual claim. Goldsmith alleges that the firms schemed to file the Allergan action in California rather than Nevada in order to involve California class action counsel and

eventually settle the class action out from under him in order to secure greater compensation for themselves.

On January 4, 2012, the <u>Allergan</u> court granted the firms' motion to withdraw from Goldsmith's representation. Goldsmith, as an individual, has not been bound by any proposed class settlement, and his individual claim was apparently still pending at the time of the filing of the subject motions to dismiss.

Defendants rely heavily on <u>Sher v. Johnson</u>, 911 F.2d 1357 (9th Cir. 1990). In that case, a California client sought and obtained a contract with a Florida law firm to represent him in a criminal case in Florida. The legal representation was provided exclusively in Florida; however, the law firm accepted payment from a California bank, made phone calls and sent letters to its client in California, and one of its partners made three trips to California to confer with the client. The district court dismissed for lack of jurisdiction. The Ninth Circuit observed, in dicta, that the afore-mentioned contacts were insufficient to support jurisdiction. However, since the law firm had also required that the client secure its obligation to pay fees with a deed of trust on property located in California, the Circuit held that such a contact, in combination with the others, was sufficient to constitute purposeful availment.

The case at hand is distinct from <u>Sher</u> in several meaningful respects. In <u>Sher</u>, the court found it significant that "the partnership did not engage in an ongoing employer-employee relationship; Sher hired the partnership to represent him in one case. The contract here did not contemplate the extensive future consequences typical of employment relationships." <u>Id.</u> at 1363 n. 3. Goldsmith does not allege a traditional employer/employee relationship between him and any defendant; however, this was not the one-shot affair of <u>Sher</u>. Here, Goldsmith had an ongoing relationship with the Sill firm in which, over the years, he collaborate with and was paid by Sill on medical tort cases in Nevada. That relationship allegedly involved Goldsmith bringing potential cases arising in Nevada to the Sill firm, which would then investigate and consult with Goldsmith

5

in Nevada and, in turn, file actions in which Goldsmith assisted in developing the case, or was named as a party. The court finds that the deliberate actions of the Sill firm established a business-like course of dealing which anticipated extensive future consequences between the Sill firm and Goldsmith. See FDIC v. British-American Ins. Co., 828 F.2d 1439, 1443 (9th Cir. 1987) ("[t]he negotiations and contemplated future consequences of the contract . . . must be considered"); Gray & Co., v. Firstenberg Machinery Co., 913 F.2d 758, 760 (9th Cir. 1990) ("'[p]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' are the factors to be considered") (quoting Burger King, 471 U.S. at 479); Hirsh v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1478 (9th Cir. 1986) ("prong is satisfied when a defendant takes deliberate actions within the forum state or creates continuing obligations to forum residents").

The court also concludes that Goldsmith's claims arise out of or relate to Sill's forum-related activities. Based on Goldsmith's prior working relationship with Sill, he brought the Allergan case to the Sill firm's attention, assisted in working up the case with the Sill firm in Nevada, and was named an individual and representative party in the litigation. Moreover, the Sill firm has not set forth a compelling case that the exercise of jurisdiction would be unreasonable. The relationship between the Sill firm and Goldsmith exhibits purposeful injection in Nevada and the Allergan case. Litigating in Nevada, especially in view of that prior relationship, would not be burdensome, and the other factors identified by the Sill defendants do not balance in favor of a finding of unreasonableness. Accordingly, the court finds that it may properly exercise jurisdiction over the Sill defendants.

      2.      Finkelstein

Finkelstein also argues that the court may not exercise personal jurisdiction over it. Finkelstein is a limited liability partnership operating out of Washington, D.C. and San Francisco. It has no significant general contacts with Nevada and has never advertised specifically in the

6

state. Finkelstein attorneys have attended several multidistrict litigation hearings in Nevada, and the firm has acted as co-counsel in several shareholder cases in Nevada over the last few years. However, these contacts were unrelated to the Allergan litigation, and do not amount to purposeful availment. Finkelstein has had contacts with Goldsmith incidental to the Allergan litigation in which Goldsmith was a party. In partner Rosemary Rivas' affidavit in support of Finkelstein's motion to dismiss, she describes that only she and associates Danielle Stoumbos and Tracy Tien had communications with Goldsmith by telephone, email and mail. Rivas also made four in-person visits to Las Vegas in connection with suits pending in California against Allergan. The first was made in 2010 with Tien to obtain discovery from Goldsmith at his office for production in the Allergan action. The second trip was made in 2011 in an attempt to resolve the issues raised in this dispute before the state court.

Finkelstein's contacts with Nevada described above are incidental to the representation of Goldsmith in the Allergan action and, alone, would not appear sufficient to confer personal jurisdiction on the court. However, there is an additional factor to be considered. Rivas' affidavit recites how Goldsmith had introduced her firm to another client which the firm represented in a separate Allergan case filed in California, Garcia v. Allergan. As with the Sill defendants, Finkelstein was thus fed business by Goldsmith after it began representing Goldsmith in the Allergan case. Rivas made two trips to Nevada in connection with the Garcia case.

While the relationship between Finkelstein and Goldsmith was not as developed or defined as the one between the Sill firm and Goldsmith, the court finds that the contacts related to the Allergan litigation, and combined with those related to the Garcia case, indicate a course of dealing and consulting relationship involving future consequences of Finkelstein receiving business opportunities through Goldsmith. While it is a close question, the court finds that this satisfies a prima facie showing that Finkelstein purposefully directed its activities to Nevada.

The court further concludes that Goldsmith's claims against Finkelstein arise out of or relate to Finkelstein's forum-related activities. Based on his prior working relationship with Finkelstein in the <u>Allergan</u> action while he practiced and consulted from Nevada, Goldsmith brought the <u>Garcia</u> case to Finkelstein. Furthermore, Finkelstein has not set forth a compelling case that the exercise of jurisdiction would be unreasonable. The relationship between Goldsmith and Finkelstein exhibits purposeful injection in Nevada with the purpose of acquiring future business opportunities. Moreover, litigating in Nevada would not be burdensome, and the other factors identified by Finkelstein do not balance in favor of a finding of unreasonableness. Accordingly, the court finds that it may properly exercise jurisdiction over the Finkelstein defendants.

       3.    <u>K&P</u>

The sufficiency of defendants K&P and Parekh's contacts with Nevada is a much closer question. K&P is a limited liability partnership operating out of Los Angeles, California, and maintains no offices outside of that state. None of K&P's attorneys reside or are licensed to practice in Nevada. Aside from its representation of Goldsmith in the <u>Allergan</u> action, K&P was only involved in one other unrelated Nevada case over ten years ago. Defendant Behram V. Parekh, counsel to K&P, filed an affidavit in support of his and the firm's motion to dismiss asserting that he was the only person in his firm that had any interaction with Goldsmith in the <u>Allergan</u> action. This interaction involved two phone calls, a few emails, and one in-person meeting. However, Goldsmith alleges in his complaint, and states in his declaration that, during the period in which he refused to agree to the class settlement in the Allergan action because of the detriment to his individual claim, defendant Parekh threatened to present certain damaging medical information to the Nevada State Board of Medical Examiners in order to pressure Goldsmith to remain as class representative and drop his individual action. Parekh denies Goldsmith's accusation.

8

The court finds that Goldsmith has failed to raise sufficient facts to make a prima facie showing for the exercise of personal jurisdiction over K&P and Parekh.  While Goldsmith's causes of action for fraud, misrepresentation and conspiracy[1] against K&P and Parekh sound in tort, they arise out of a contractual attorney-client relationship, as do Parekh's alleged threats to Goldsmith to pressure him into conformity with defendants' litigation strategy.  Beyond the legal relationship itself, K&P and Parekh did not establish a course of dealing or consulting relationship with Goldsmith which involved the future consequence of receiving business opportunities through Goldsmith, as did the Sill defendants and Finkelstein.  The court will grant K&P's motion to dismiss for lack of personal jurisdiction.

B.   Ripeness

All defendants contend pursuant to Fed. R. Civ. P. 12(b)(1) that the court lacks subject matter jurisdiction over this action because the Allergan action remains unresolved.  The elements of a legal malpractice claim are: (1) the existence of an attorney-client relationship, (2) a duty owed to the client by the attorney, (3) breach of that duty, and (4) causation and damages.  Semenza v. Nevada Med. Liab. Ins. Co., 104 Nev. 666, 667-68, 765 P.2d 184, 185-86 (1988).  Specific to the ripeness issue, the Semenza court ruled that when malpractice is predicated upon actions involving handling of litigation, a cause of action for malpractice could not accrue until the "underlying cause of action has been finally resolved.  Id. at 668, 765 P.2d at 185.  "[w]here there has been no final adjudication of the client's case in which the malpractice allegedly occurred, the element of injury or damage remains speculative and remote, thereby making premature the cause of action for

---

[1] While the issue has not been raised by the parties, the court notes that the Ninth Circuit has not adopted a conspiracy theory of personal jurisdiction.  See Underwager v. Channel 9 Australia, 69 F.3d 361 (9th Cir. 1995) (not reaching question of whether conspiracy theory of personal jurisdiction is valid because plaintiff failed to allege facts suggesting a conspiracy).  However, due to the Circuit's rejection of an analogous theory for venue purposes, see Peidmont Label Co. v. Sun Garden Packing, 598 F.2d 491, 492 (9th Cir. 1979), and in light of the Supreme Court's mandate that "[e]ach defendant's contacts with the forum State must be assessed individually," Calder v. Jones, 465 U.S. 783, 790 (1984), the court need not venture into that territory.

9

professional negligence." Id. at 668, 765 P.2d at 186.  However, the Supreme Court of Nevada has since recognized Semenza as announcing a general rule, and has determined that exceptions, such as a voluntary dismissal of a futile appeal, apply.  See Hewitt v. Allen, 118 Nev. 216, 43 P.3d 345 (2002).

Here, Goldsmith's allegation is that defendants essentially abandoned his individual case in favor of proceeding with a proposed settlement of the class action, and failing to properly involve him as class representative in the class action settlement.  Under these circumstances, when the alleged malpractice involves improperly subordinating one aspect of litigation in favor of advancing another, the damage comes from the alleged manipulation of the litigation in order to avoid potentially mutually exclusive results, and the general rule regarding the final adjudication of a case would, therefore, not apply.  Moreover, the court notes that there has been no opportunity for the parties to update the status of the class action or individual causes of action since June 2012.  Therefore, the court will deny defendants' motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, and defendants' motion to dismiss under Rule 12(b)(6) without prejudice at this time.

THE COURT HEREBY ORDERS that defendants' motions to dismiss plaintiff's complaint (#4 and #9) are granted as to defendants Kirkland & Packard and Parekh for lack of personal jurisdiction and denied without prejudice as to the remaining defendants in all other respects.

THE COURT FURTHER ORDERS that defendants' motion to strike (#21) is DENIED.

DATED this 26 day of March, 2013.

_____
Lloyd D. George
United States District Judge